Samuel L. Cantor v. Commissioner.
Cantor v. Commissioner
Docket No. 40043.
United States Tax Court
1953 Tax Ct. Memo LEXIS 238; 12 T.C.M. (CCH) 580; T.C.M. (RIA) 53182; May 26, 1953
*238 William L. Berger, Esq., 1 State Street, Boston, Mass., for the petitioner. Lester H. Salter, Esq., for the respondent. MURDOCK
Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax of $3,414.14 for 1944, $344.50 for 1945 and $4,410.23 for 1946. The only issue for decision is whether the Commissioner erred by including in income, as a dividend, $5,600 for 1944 and $6,700 for 1946. The facts have been presented by a stipulation. The petitioner filed his individual income tax returns for the taxable years with the collector of internal revenue for the District of Massachusetts. The Henriett Shoe Company, hereafter called Henriett, was incorporated under the laws of Massachusetts on August 10, 1942 to manufacture shoes. It was organized pursuant to an agreement between the petitioner and Benjamin Sorofman dated July 25, 1942. Its authorized capital stock consisted of 50 shares of no par common stock and 990 shares of $100 par value cumulative preferred stock. The common stock had voting rights, preferred had none until default. The petitioner paid in $17,000 for 170 shares of preferred and Sorofman paid in $3,000 for 30 shares *239 of preferred. Nothing was paid for the common stock. Twenty-four shares of common were issued to Cantor, 24 to Sorofman and 2 qualifying shares to Arcadia Shoe Company. The principal officers of Henriett were Sorofman, president and the petitioner, treasurer. The by-laws of Henriett provided that the preferred stock was entitled to its cumulative dividends before any dividends could be declared or paid on the common stock and "* * * Shares of the preferred stock shall be redeemed from surplus or earnings of the corporation by vote of the Board of Directors at any time at $100.00 per share plus accrued and unpaid dividends on 15 days' notice; is to be entitled to a sinking fund of all the net profits of the corporation less the amount thereof required to pay accrued and unpaid dividends on the preferred stock except as to any such net profits available for sinking fund as Directors may by 3/4 vote desire to leave in the business." Henriett purchased all of the assets of another shoe company for $6,153.89 on August 10, 1942, and began to manufacture shoes. The agreement of July 25, 1942 provided "The sinking fund money shall be applied to the redemption of preferred stock annually *240 within 60 days of the end of the next preceding fiscal year," Sorofman could at any time purchase preferred stock from the petitioner in order to make their holdings equal by paying $100 per share, plus accrued and unpaid dividends for each share, and both should devote full time to the business for which the petitioner was to receive $150 per week and Sorofman $75 until their holdings of preferred stock should become equal and thereafter they were to receive equal salaries. Henriett, on February 1, 1944, paid $5,600 to the petitioner in redemption of 56 shares of its preferred stock held by him and paid $1,000 to Sorofman in redemption of 10 shares of its preferred stock held by him. That action was in accordance with a unanimous vote of the shareholders on January 28, 1944, the agreement dated July 25, 1942 and the by-laws of Henriett. The petitioner sold 47 shares of the preferred stock of Henriett to Sorofman on February 1, 1944 for $4,700. The qualifying common shares held by Arcadia were surrendered on October 11, 1944 and issued, one each, to the petitioner and Sorofman without consideration. Henriett, on September 13, 1946, paid the petitioner and Sorofman $6,700 each *241 in redemption of 67 shares of its preferred stock held by each. That action was in accordance with a unanimous vote of the stockholders on that date, the agreement of July 25, 1942, and the by-laws of Henriett. The officers and directors of Henriett, on February 1, 1944 and September 13, 1946 were of the opinion that the sum of the invested capital and the accumulated earned surplus of the corporation exceeded its requirements for operating capital. The shares redeemed on those dates were cancelled. The above were all of the changes in stockholdings of Henriett from the date of its organization through July 31, 1947, and during that time the corporation undertook no reorganizations or liquidations and its business did not undergo any contraction. The earned surplus of Henriett on the nearest dates before and after the redemptions for which balance sheets are available were $6,356.91 on July 31, 1943, $29,394.26 on March 31, 1944, $35,613.13 on July 31, 1946, and $48,772.11 on January 31, 1947. The annual earnings of Henriett before Federal taxes and its accumulated earnings at the end of each of its fiscal years without diminution for the amounts of the redemptions here in issue *242 were as follows for the fiscal years ended July 31, 1944 through July 31, 1949: Accumulated
Earnings in
Earnings End of
Fiscal Year
Fiscal Year
Fiscal Year
1944
$22,835.16
$ 16,323.31
1945
44,717.42
21,903.63
1946
35,127.05
35,613.13
1947
55,820.49
69,135.68
1948
51,915.75
98,911.03
1949
64,855.57
135,962.44
Henriett paid annual dividends at the rate of 6 per cent on its outstanding preferred stock but paid no dividends on its common stock. The parties agree that the redemptions and cancellations of the preferred stock were in no sense liquidations or partial liquidations. The petitioner contends that the $20,000 paid in for the preferred stock was intended to be merely loaned but that argument is wholly unconvincing. The $20,000 was the only capital invested in the business since nothing was paid for the common stock. , affd. per curiam ; , aff'd. ; . The petitioner advances no clear or sound argument against the determination of the Commissioner. The *243 only capital which Henriett had was the $20,000 paid in for preferred stock by the petitioner and Sorofman and, as soon as it had used that capital to earn sufficient profits, those who had it repay them $20,000 from available accumulated earnings or profits in redemption and cancellation of the only outstanding stock for which any money or property had been received by the corporation. Meanwhile, the only dividends paid were those on the preferred stock and a large surplus was accumulated. Such an arrangement makes the distribution, cancellation and redemption in each year essentially equivalent to the distribution of a taxable dividend within the meaning of section 115 (g) (1). The net effect was to distribute earnings to the two men who held all of the stock of the corporation. This case is stronger for the Commissioner than , remanded , supplemental opinion, , in which section 115 (g) was held to apply. Decision will be entered for the respondent.